UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JANET SOLNIN,

                          Plaintiff,                         **MEMORANDUM & ORDER**

    -against-                                08 CV 2759  (DRH) (ARL)

SUN LIFE AND HEALTH INSURANCE
COMPANY, GENWORTH LIFE AND
HEALTH INSURANCE COMPANY, GE
GROUP LIFE ASSURANCE COMPANY,
and PHOENIX LIFE INSURANCE
COMPANY,

                          Defendants.
--------------------------------------------------------X

**APPEARANCES:**

**RIEMER & ASSOCIATES LLC**
Attorney for Plaintiff
60 East 42nd Street
Suite 1750
New York, New York 10165
By:    Scott M. Riemer, Esq.

**TURLEY, REDMOND, ROSASCO & ROSASCO LLP**
Attorney for Plaintiff
3075 Veterans Memorial Highway
Suite 200
Ronkonkoma, New York 11779
By:    Troy G. Rosasco, Esq.
        Scott R. Tirrell, Esq.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Attorney for Defendants
601 Walnut Street
Suite 130 East
Philadelphia, Pennsylvania 19106
By:    Joshua Bachrach, Esq.

**HURLEY, Senior District Judge:**

## *INTRODUCTION*

Plaintiff Janet Solnin ("Plaintiff) brings the present action under the Employee

Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et. seq.* ("ERISA") to

recover benefits allegedly due under an employee benefit plan. Defendants Sun Life and Health

Insurance Company ("Sun Life"), Genworth Life and Health Insurance Company ("Genworth"),

GE Group Life Assurance Company ("GE Group Life"), and Phoenix Life Insurance Company

("Phoenix Life") (collectively, "Defendants") have moved for summary judgment pursuant to

Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is

DENIED.

## *BACKGROUND*

The material facts are drawn from the Complaint, the parties' Local Civil Rule 56.1

Statements, and the Court's March 23, 2008 Memorandum and Order issued in a prior, separate

action between Plaintiff, GE Group Life, and Phoenix Life (the "Remand Order"),[1] and are

undisputed unless otherwise noted.

### *Plaintiff's Injury and Approval for Long Term Disability Benefits*

Plaintiff was employed as an Assistant Manager by Reliance Federal Savings Bank

("Reliance"). On November 18, 1998, Plaintiff suffered a back injury at work when she crawled

---

[1]      *Solnin v. GE Group Life Assur. Co.*, 2007 WL 923083 (E.D.N.Y. March 23, 2008). The Remand Order resolved the defendants' motion for summary judgment. The facts set forth in the Remand Order were drawn from the parties' Local Civil Rule 56.1 Statements filed in connection with the defendants' motion and were undisputed unless otherwise noted. The parties have cited to the Remand Order in their Local Civil Rule 56.1 Statements filed in connection with the present motion.

underneath a table to fix a computer.  On February 13, 1999, she filed a Notice of Claim for

Disability Benefits under the disability insurance policy (the "Policy") provided by Reliance; her

application was filed on July 26, 1999.  By letter dated August 31, 1999, Phoenix Life notified

Plaintiff that her claim for long term disability benefits had been approved, and she began

receiving such benefits commencing with the period August 4 through August 13, 1999.

***The Policy***

The Policy was administered by Phoenix Life until April 2000, when GE Group Life

acquired the group life and health operation of Phoenix Life and thereafter became the new

Administrator.  Defendants contend that Phoenix Life is now known as Sun Life & Health

Insurance Company (U.S.), although Plaintiff states that Sun Life has not provided "discovery

responses sufficient" to confirm that statement, nor has it produced "a controlling document that

grants discretionary authority to defendant Sun Life and Health Insurance Company."  (Pl.'s

Response to Defs.' 56.1 ¶ 2.)  It appears from the records produced in connection with this

motion that Genworth is now known as Sun Life Financial.[2]  (AR 279.)[3]

The Policy is an employee welfare benefit plan governed by ERISA.  The Policy defines

---

[2]      Defendants contend that the "name of the insurer has changed over the years," and
that "[f]or the sake of consistency, defendants will be referred to collectively as 'Sun Life' or
'defendant' unless otherwise stated."  (Defs.' Mem. at 2 n.1.)  Accordingly, and because the
Court is without any information regarding the specific contours of the relationship between GE
Group Life, Genworth, and Sun Life, for purposes of this motion the Court presumes that GE
Group Life, Genworth, and Sun Life all, at some point or another, administered the Policy
governing Plaintiff's claim for benefits.

[3]      "AR" refers to the documents submitted by Plaintiff with its opposition papers
that purport to be "portions of the claim file produced by Sun Life in this action between the date
that the Court issued its remand order in the prior action (March 23, 2007) and the date that this
action was commenced (July 10, 2008)."  (Aff. of Scott M. Riemer, dated February 12, 2010
("Riemer Aff."), ¶ 2 & Ex. A.)

"Total Disability" and "Totally Disabled" as:

1.   During the Elimination Period and the following 24 months, you are unable to perform all the material and substantial duties of your regular occupation.

2.   After the Elimination Period and the following 24 months, you are unable to perform the duties of Any Occupation.[4]

### Change in Eligibility for Benefits

By letter dated March 28, 2002, GE Group Life advised Plaintiff that the definition of "Total Disability" applicable to her claim had changed because the 24-month period following the Elimination Period had expired. Plaintiff was notified by letter that additional medical information was required from her and that additional benefits could not be considered until the requested information was received and reviewed.

That same day, GE Group Life received a Supplemental Statement of Disability from Plaintiff and an Attending Physician's Supplemental Statement and medical report from Dr. Thomas M. Mauri, M.D., Plaintiff's treating physician. Thereafter, on April 3, 2002, GE Group Life received additional information from Plaintiff concerning her medical condition, including a one-page report from Plaintiff's physical therapist and a transcript from a Workers' Compensation Board hearing on September 28, 2001. On April 5, 2002, GE Group Life received a one-page report from Plaintiff's physical therapist.

---

[4]   The Policy defines "Any Occupation" as: "Any gainful occupation that you are or become qualified for by education, training or experience. Your prior level of earnings from your regular occupation will be considered in determining any occupation." (Decl. of Joshua Bachrach in Supp. of Defs.' Mot. for Summ. J., dated Jan. 13, 2010 ("Bachrach Decl."), Ex. C, Group Long Term Disability Certificate at 5.) The "Elimination Period" is defined as "180 days per Period of Disability." (*Id.* at 3.)

4

***Dr. Hicks' April 2002 Report***

GE Group Life then referred Plaintiff's claim to one of its outside medical doctor-consultants, Thomas Hicks, M.D., for a determination regarding Plaintiff's restrictions and limitations. Dr. Hicks' notes indicated that he considered a February 24, 1999 report of Raphael P. Davis, M.D., a neurosurgeon who saw Plaintiff in consultation that day, and that he reviewed an April 26, 2000 report of Robert L. Michaels, M.D., who examined Plaintiff on behalf of her workers' compensation carrier. On April 5, 2002, Dr. Hicks issued a report and noted, in pertinent part:

> After reviewing the provided records, it is my opinion that the claimant is not impaired to the point where it would prevent her from working. I believe that she is capable of performing sedentary occupation. Restrictions and limitations that I believe to be appropriate include limited walking, no climbing stairs/ladder, no bending/kneeling/squatting/stooping, no lifting greater than 5 lbs. and sit/stand/walk as tolerated, and no pushing or pulling.

(Remand Order at 8.)

***The Video Surveillance***

In an undated memorandum to the file, Jacque C. Cassella ("Cassella") from GE Group Life noted that his efforts to obtain Plaintiff's physical therapy records were apparently being thwarted by Plaintiff's rescission of her earlier signed authorization to release records.[5] He further noted that additional information had been received that cast some doubt on the veracity

---

[5] Plaintiff asserts that her counsel had explained to GE Group Life that she revoked the authorization after a GE Group Life representative advised that her claim was being terminated anyway. (Pl.'s 56.1 ¶ 17.)

of Plaintiff's claims.[6]  Accordingly, Cassella noted that he was going to arrange for video surveillance to determine Plaintiff's functional capabilities.

On April 10, 2002, GE Group Life was informed by Plaintiff's physical therapist's office that Plaintiff had instructed it not to release any records to GE Group Life.  By letter dated April 12, 2002, Cassella wrote to Plaintiff noting, *inter alia*, the difficulties he had encountered in attempting to obtain her physical therapy records.  He advised her that if she continued to refuse to provide such records, GE Group Life would make a final determination regarding her eligibility based upon the medical information it had.

In late April 2002, GE Group Life received the reports and video tape of the surveillance of Plaintiff that it had arranged.  Over the course of three days (April 15, 17, and 19 of 2002), Plaintiff was videotaped running various errands, including carrying empty trash cans and dragging other trash cans, driving to physical therapy and the supermarket, picking up clothing from the dry cleaning, cleaning the front seat of her car while hunched over for approximately ten to fifteen minutes, using a garden hose, pushing a grocery cart filled with groceries and a plant, placing same into the trunk of her car, carrying the groceries into her house, driving to and entering Bloomingdale's, and returning to her car with a paper bag.

### Dr. Hicks' May 2002 Report

On May 9, 2002, Cassella asked Dr. Hicks to review new information obtained since his prior review, which essentially consisted of the video surveillance.  On May 9, 2002, Dr. Hicks issued a report, which stated, in pertinent part:

---

[6]     Cassella referred to a newspaper article reporting that Plaintiff had a choking incident at a diner on November 20, 2001.  The article mentioned that Plaintiff was planning a trip to Las Vegas and that she was a frequent customer of the diner.

Based on my review of the documentation in the file and my observation of the videotaped physical activities as I described above, there is clear inconsistency between the claimant's self-reported functional level that is documented in the file and the claimant's observed physical activities. Based on the observed physical activities, it is my opinion that the claimant is capable of performing sedentary-light work.

(Remand Order at 11.)

### GE Group Life's Denial of Long-Term Benefits

By letter dated May 10, 2002, Cassella advised Plaintiff that GE Group Life had determined that she was able to perform "sedentary to light work" and was therefore not eligible for long-term disability benefits beyond August 4, 2001, the date the definition of disability changed to "Any Occupation." The denial letter relates that GE Group Life relied on Dr. Hicks' reports and the video surveillance in making its determination.

On September 6, 2002, Plaintiff formally appealed the denial of continued long-term disability benefits. By letter dated December 17, 2002, GE Group Life stated as follows:

There is no new information in our file that would lead us to change our decision to terminate your long-term disability claim. It remains our opinion that you are able to engage in a sedentary occupation. Under the terms of the Plan, you have exhausted your administrative remedies.

(*Id.*)

### The Prior Action

On September 24, 2002, Plaintiff initiated a separate action before this Court, docket number 03 CV 4857 (the "Prior Action"). Her Complaint asserted three causes of action: breach of contract, declaratory judgment that Plaintiff is totally disabled within the meaning of the Policy, and a violation of ERISA. Defendants moved for summary judgment and the Court

dismissed Plaintiff's state law breach of contract claim, finding it to be preempted by ERISA. (*Id.* at 14.)

With respect to Plaintiff's ERISA claims, the Court found that the Policy and applicable Certificate of Insurance contained "clear language . . . granting Phoenix Life the discretionary authority to determine eligibility for benefits," and therefore "the Court will apply the arbitrary and capricious standard of review to the denial thereof." (*Id.* at 14, 16-17 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.")).) As the Court noted, under the arbitrary and capricious standard of review, a decision to deny benefits may be overturned only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).

The Court found that "GE Group Life's denial of long-term benefits was arbitrary and capricious" because the evidence on which it relied – the video surveillance and Dr. Hicks' reports – did not "constitute substantial evidence to support the conclusion that Plaintiff can perform sedentary work." (Remand Order at 18-19.) First, the Court found that the activities recorded on the video tapes were not entirely inconsistent with Plaintiff's reported limitations as noted in her own statements as well as the reports of Dr. Mauri, her treating physician. Moreover, the Court reasoned that "[t]he fact that Plaintiff engaged in a few hours of activities on three separate days does not belie the evidence indicating that she cannot perform sedentary

work.  This is especially true considering that the generally recognized definition of sedentary work is work which involves two hours of standing or walking and six hours of sitting in an eight-hour work day." (*Id.* at 19-20 (internal quotation marks and alteration omitted) (quoting *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 n.5 (2d Cir. 2001)).)  The Court noted that "[t]here is nothing in GE Group Life's decision which even suggests that it considered this definition and the activities taped are simply not that probative, much less conclusive, as to Plaintiff's ability to perform sedentary work as that term has been generally defined."  (*Id.* at 20.)

The Court also noted that Dr. Hicks' reports, issued in April and May 2002, regarding Plaintiff's ability to perform sedentary work were based upon his review of only two medical reports and video surveillance.  (*Id.* at 21.)  The Court found that Dr. Hicks "apparently rejected multiple reports issued by Dr. Mauri, Plaintiff's treating physician, from January 2002 through April 2002, as well as Plaintiff's Supplemental Statement dated March 14, 2002, indicating that she 'can't walk that much and at times [her] legs have no feeling and [she] fall[s]' and that she leaves her home 'sometimes if [her] legs are working.'" (*Id.* (citation omitted).)  The Court found that although "Dr. Hicks was not required to accord Dr. Mauri's opinions special weight, it cannot be said that Dr. Hicks' April 2002 rejection of Dr. Mauri's 2002 reports was based on 'reliable evidence' when the evidence relied upon consisted of one medical report from February 1999 and another from April 2002."  (*Id.* at 22.)  The Court further noted that "GE Group Life could have directed Plaintiff to submit to an updated independent physical examination but it declined to do so."  (*Id.*)  Additionally, Dr. Hicks failed to consider Plaintiff's recent complaints of pain – a subjective element that is an "important factor to consider in determining disability." (*Id.* (quoting *Conners*, 272 F.3d at 136).)  The Court found that "[a]lthough it is not unreasonable

9

for an insurer to credit objective evidence over subjective evidence, the objective evidence relied on by Dr. Hicks was over two years old." (*Id.*)

Finally, the Court identified "[a]nother error underlying [GE Group Life's] determination." (*Id.*) In *Demirovic v. Building Service 32 B-J Pension Fund*, 467 F.3d 208, 213-15 (2d Cir. 2006), the Second Circuit held that an Administrator's review of a claimant's "total disability" application under ERISA must include consideration of the claimant's ability to pursue gainful employment in light of all the circumstances, which includes consideration of the type of employment a claimant remains capable of performing. Therefore, "[a] finding that a claimant is physically capable of sedentary work is meaningless without some consideration of whether she is vocationally qualified to obtain such employment, and to earn a reasonably substantial income from it, rising to the dignity of an income or livelihood, though not necessarily as much as she earned before the disability." *Id.* at 215.

Turning to the circumstances present in the Prior Action, the Court found that "the record here shows a complete absence of consideration of Plaintiff's vocational circumstances. This record cannot pass muster even under the deferential arbitrary and capricious standard of review." (Remand Order at 23 (internal quotation marks and alterations omitted).) Accordingly, for this independent reason, the Court found that GE Group Life's decision to deny benefits was not supported by substantial evidence.

Accordingly, the Court denied the defendants' motion with respect to Plaintiff's ERISA claims and remanded the matter to GE Group Life for further proceedings consistent with its opinion and with the following directive:

> Under *Demirovic*, GE Group Life must consider both whether

10

Plaintiff is physically capable of obtaining employment from which she may earn a reasonably substantial income and whether she is vocationally qualified to obtain such employment. *See Demirovic*, 467 F.3d at 215. While GE Group Life need not employ a particular method to make this determination, its conclusion must satisfy a reviewing court that consideration of the claimant's circumstances was not arbitrary and capricious. *Id.* In addition, although the Court's review was confined to the administrative record, upon remand, GE Group Life should look at any additional materials submitted by Plaintiff in support of her application. *See Miller*, 72 F.3d at 1073 (where court concludes possibility exists that claim could be denied upon receipt of additional evidence, proper course is to remand with instructions to consider additional evidence).

(*Id.* at 23-24.)[7]

### *The Parties' Post-Remand Document Demands*

The first correspondence between the parties post-remand appears to have been by letter dated July 5, 2007, in which Plaintiff's counsel requested a copy of the administrative record and proposed a schedule by which the review would proceed.[8] (AR 280.) Plaintiff's counsel stated: "Given the nature of Ms. Solnin's disability and the credentials of her treating physician[s], we believe a full and fair review would require an IME by a Board Certified Orthopedic Surgeon." (*Id.*) In response, Mary Witek ("Witek"), a Long Term Disability Consultant for Genworth, sent Plaintiff a July 27, 2007 letter stating that "we are in the process of gathering additional medical evidence and other pertinent information" regarding Plaintiff. (AR 274.) "To initiate this process," Witek enclosed a records release authorization form for Plaintiff to sign so that

---

[7]     GE Group Life and Phoenix Life appealed the Remand Order but, by stipulation dated June 21, 2007, subsequently withdrew the appeal. (Compl. ¶¶ 19, 20.)

[8]     Plaintiff proposed that she would "be afforded 60 days" from receipt of the administrative record to submit additional medical and vocational evidence, and Defendants would then have 60 days to review "all existing and new evidence, including any Independent Medical Examinations you wish to obtain." (AR 280.)

Genworth could "request and obtain all medical evidence in association to her claimed disability." (*Id.*) Witek also requested that Plaintiff produce several other documents, including copies of her tax returns for the years between 2001 and 2007. (*Id.*) At the conclusion of the letter, Witek made the following statement:

> Please be advised that this group policy is considered an Employer sponsored benefit plan, which is subject to the requirements of the Employee [R]etirement Income Security Act (ERISA). Under ERISA, a benefit determination must be made within 45 days after receipt of your claim. However, ERISA[ ] does allow an extension of two separate periods of 30 days each (for a total of 105 days) to make this claim determination. Please note that the time from the date you have been advised of the information needed to proceed with the claim review to the time the information is received[ ] is considered "tolled" (not counted) in the total number of days allowed to make a determination.

> Therefore, our review of Ms. Solnin's claim is currently "tolled" pending receipt of all the information requested above and [we] would appreciate having this information forwarded to my attention within 30 days of this letter. If this requested information is not received Ms. Solnin's claim may be denied for failure to provided sufficient "Proof of Loss" as contractually required.

(AR 275.)

On July 27, 2007, counsel for Genworth wrote to Plaintiff informing her that her "claim is under active review," and that Plaintiff should expect to receive various information requests as well as "a current authorization to be signed for the release of medical information." (AR 276.) Genworth's counsel further stated that "[o]ur Claim area will make a determination whether [an IME] is needed after reviewing all the medical information that is obtained from Ms. Solnin's providers." (*Id.*) Plaintiff responded, in a letter dated August 8, 2007, that some of Genworth's "current [document and information] requests undoubtedly overlap information

already in your claims folder." (AR 268.) Plaintiff then demanded that Defendants produce twenty-three categories of documents that Plaintiff "is entitled to under ERISA." (AR 268-72.) In making these demands, Plaintiff referenced the regulatory provision contained in 29 C.F.R. § 2560.503-1, "which sets out proper claim practices for claims arising under ERISA." (AR 269.) Plaintiff concluded that, "[u]pon receipt of this information, we will be happy to supplement your file with any additional information you may require for a full and fair review of this claim. In the interim, we are requesting updated medical reports, functional capacity reports, and vocational reports which we will forward upon receipt." (AR 273.)

By letter dated August 22, 2007, Witek informed Plaintiff that she was "in the process of reviewing" Plaintiff's "extensive requests," and reminded Plaintiff that she needed to supply Genworth with "updated claim forms" as well as her federal and state tax returns from 2001 to 2007. (AR 266.) On September 7, 2007, Genworth's counsel provided a letter response to Plaintiff's August 8, 2007 document demands. (AR 263-265.) Genworth's counsel argued that "[t]o the extent that the ERISA claim regulation that you have identified does apply to [Genworth], we believe that many of your requests go well beyond the information required under 29 C.F.R. 2560.503-1." (AR 263.) Genworth then provided both general objections and specific responses to Plaintiff's document demands. (*See* AR 263-65.)

Witek followed up with Plaintiff, by letter dated September 19, 2007, regarding Defendants' outstanding requests for updated claim forms, copies of Plaintiff's tax returns, and a signed records release authorization form. (AR 261.) By a separate letter of the same date, Witek provided Plaintiff with a copy of Genworth's claim handling procedures, as per Plaintiff's August 8, 2007 request. (AR 262.)

13

*Plaintiff's First Post-Remand Submission*

On November 9, 2007, Plaintiff submitted "additional medical evidence" in support of her claim for benefits, including 28 separate narrative reports from Dr. Mauri, a Physical Medical Source Statement Questionnaire completed by Dr. Mauri, Official Workers' Compensation Board Medical reports submitted by Dr. Mauri, and Dr. Mauri's office notes. (AR 187.) Plaintiff notified Witek that "we will shortly be submitting additional expert vocational evidence to your attention," and asked that no decisions be made pending that submission. (*Id.*) Genworth acknowledged receipt of these materials on November 26, 2007, and reminded Plaintiff that failure to produce certain outstanding documents (including a signed records release authorization form) "could result in a denial of her claim." (AR 186.)[9] Plaintiff was informed that "[o]nce we are in receipt of the requested claim forms, we can start our re-evaluation. As part of this re-evaluation we may exercise our right to request Ms. Solnin attend an Independent Medical Examination (IME)." (*Id.*)

*Plaintiff's Second Post-Remand Submission*

On January 8, 2008, counsel for Plaintiff submitted supplemental materials to Genworth, including the report of Andrew J. Pasternak, a vocational expert. (AR 139.) Plaintiff also provided a signed authorization for the release of her medical records, but with significant alterations made to the form. (AR 153.) In particular, Plaintiff crossed out the language on the authorization form that would allow Defendants to obtain information from any business associate, financial institution, or governmental agency, including the Social Security

---

[9]     Only the first page of the November 26, 2007 letter, written on Genworth letterhead, was provided to the Court. (AR 186.)

Administration, State Workers' Compensation, or State Unemployment Compensation.  (Defs.'
56.1 ¶ 33.)  In addition, Plaintiff stated that "it is our legal position that you have no right to an
IME at this time," and that she did not have any additional evidence to submit.  (AR 140.)
Accordingly, Plaintiff requested that Defendants "begin the re-evaluation ordered by Judge
Hurley immediately pursuant to the decision making deadlines found in the ERISA regulations."
(*Id.*)

    Defendants did not communicate with Plaintiff again until February 29, 2008.  On that
date, Plaintiff's counsel wrote Witek a letter indicating that "45 days have pas[sed] since our last
and final submission of additional medical and vocational evidence," and that Witek had not
"acknowledged our final submission nor have you returned our phone calls requesting a status of
the further review."  (AR 130.)  Plaintiff's counsel requested an immediate status update.  (*Id.*)
That same day, Witek sent a letter to Plaintiff's counsel advising him that "your client is
improperly refusing to cooperate in our review of her LTD claim for benefits."  (AR 134.)  In
particular, Witek noted that Plaintiff had yet to produce "an unredacted Authorization to Obtain
and Redisclose Information" or the requested tax documents.  (AR 135.)  Witek stated that the
altered records release authorization form provided by Plaintiff was unacceptable because, *inter
alia*, "you are attempting to prohibit us from inquiring to [Federal, State, and local] agencies
which would be a necessary step in any claim review to determine if the claimant is obtaining
any other source of income."[10]  (*Id.*)  Finally, Witek stated that Defendants' "right to request an

---

[10]    Defendants admit that they were able to use the altered authorization form to
request treatment records from Dr. Mauri and that those records were provided on March 24,
2008.  (Defs.' 56.1 ¶ 63.)  Defendants assert, however, that they were not able to "fully utilize"
the altered authorization because they were prevented from disclosing those records "to any
reviewing doctors."  (*Id.*)

IME is present in the Plan language, the right to request an IME is not in any way restricted and [ ] a claimant's refusal to have an IME will terminate all otherwise eligible benefit payments." (AR 137.)  Witek enclosed another records release authorization form and instructed Plaintiff to sign it but not to redact or alter it in any way.  (AR 138.)

### The Pharmacy Records

Meanwhile, on March 12, 2008, Witek received the results of a "pharmacy canvas" conducted by RSB II, an apparent outside provider.  (AR 122-129, 132.)  The canvas indicated that a Rite Aid Pharmacy and Cottage Pharmacy located near Plaintiff's address possessed prescription records regarding Plaintiff.  (AR 122.)  The canvas report indicated that neither pharmacy would produce those records unless Plaintiff signed their own authorization forms.  In particular, the canvas report stated that "Cottage Pharmacy's corporate office will only honor a fully completed original **notarized authorization**.  Please have the attached authorization notarized and then please mail the original to our office to secure the prescription profiles."  (AR 122 (emphases in the original).)

By letter dated March 17, 2008, Plaintiff's counsel informed Witek that Plaintiff was "in the process of obtaining a signed [general] release without restriction" as well as "copies of requested tax returns."  (AR 120.)  Plaintiff's counsel further noted that Plaintiff had "received no contact from you for a period of fifty two days following our submission, on January 8, 2008, of the remaining items identified in your November 26, 2007 letter."  (*Id.*)[11]  On April 2, 2008, Plaintiff's counsel sent a follow-up letter to Witek enclosing an executed and unaltered records

---

[11]     Only the first page of this March 17, 2008 letter is included in the documentation provided to the Court.

release authorization form.  (AR 117, 119.)  Plaintiff's counsel also informed Witek that the tax returns requested by Defendants did not "exist" because Plaintiff was not "required to file tax returns during those years."  (AR 117.)  Plaintiff's counsel urged Witek to attend to Plaintiff's claim as "there are no additional outstanding requests, and [ ] nearly three months have passed since our submission on January 8, 2008."  (AR 118.)

In response, Witek sent an April 4, 2008 letter to Plaintiff's counsel informing him that "we are in the process of attempting to independently[ ] obtain medical records from Dr. Thomas Mauri," at which point Defendants' medical consultant would review the file.  (AR 26.)  Witek stated further that she was attempting "to secure any and all pharmacy records" regarding Plaintiff and, to that end, Plaintiff would be required to complete the enclosed Cottage Pharmacy Authorization form.  (*Id.*)  Witek also noted that "once the file has been reviewed by our medical consultant, we will be requesting Ms. Solnin [ ] attend an Independent Medical Examination." (*Id.*)

Plaintiff's counsel sent a letter to Witek, dated April 23, 2008, raising "several questions" regarding the Cottage Pharmacy authorization form, including the necessity of an original, notarized signature.  (*See* AR 20.)  Plaintiff's counsel reminded Witek that "more than 100 days have elapsed since our submission on January 8, 2008," and made the following statement:

> Evidently, Sun Life intends to request [an Independent Medical] [E]xamination regardless of what the "medical consultant" opines, or perhaps, you already know what your medical consultant will opine. In any event, if Sun Life pays Ms. Solnin the benefits due and owing to her under the policy to date, and puts Ms. Solnin "on claim" going forward, then an Independent Medical Examination would appear to be entirely "reasonable" under the policy provision that you have repeatedly cited, to determine her ongoing entitlement to future benefits.  At this juncture, however, this claim is on remand . . . As a

result, Sun Life's role is to reevaluate the medical documentation of many years of disability . . . Sun Life's present evaluation is accordingly limited to this context.

(AR 21.)  No further correspondence was exchanged between the parties and on July 10, 2008, Plaintiff filed the Complaint in the instant action.

The parties do not dispute that Sun Life never requested or obtained a report by a medical consultant or a vocational evaluation of Plaintiff's file – although Defendants contend that the reason for this is that Plaintiff did not provide the authorization for the Cottage Pharmacy records and did not agree to attend an IME.  (*See* Defs.' Response to Pl.'s 56.1 ¶¶ 72, 73.)  The parties also agree that Sun Life never designated anyone to conduct an IME of Plaintiff or ever "directly scheduled" such an IME.  (Pl.'s 56.1 ¶ 74.)  Defendants assert, however, that because Plaintiff had "repeatedly stated that she would not attend" an IME, there was "no reason" to schedule one. (Defs.' Response to Pl.'s 56.1 ¶ 74.)

***Discussions Regarding Plaintiff's IME***

On November 19, 2009, a conference call was held before Magistrate Judge Lindsay and the parties were advised to attempt to come to an agreement regarding "the IME issue."  (Pl.'s 56.1 ¶ 75.)  By letter dated November 24, 2009, Plaintiff indicated that she would submit to an IME so long as it was performed by a "mutually agreed upon medical provider."  (Riemer Aff., Ex. B at 1.)  This offer was rejected because, according to Defendants, "there is no provision in the policy which provides for a mutually agreed upon doctor to perform the independent medical examination."  (Defs.' Response to Pl.'s 56.1 ¶ 76 (citing Bachrach Decl, Ex. C at 25) ("While a claim is pending or after payments have commenced, we have the right to have you examined by a Physician of our choice as often as is reasonably necessary.").)  Subsequently, by letter dated

December 1, 2009, Plaintiff offered to provide Defendants with IRS authorizations as well as copies of her medical records and authorization forms, and to "agree to reasonable timeframes for conducting the [IME] and Sun Life's determination." (Riemer Aff., Ex. B at 7.) Plaintiff reiterated, however, her request that the IME be conducted by "an independent doctor[ ] who is agreeable to both parties." (*Id.*) Defendants did not respond to Plaintiff's December 1, 2009 letter, and filed the instant motion.

## DISCUSSION

### I.      *Applicable Law and Legal Standards*

#### A.      *Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or

other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful [ ] of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## II.    *The Parties' Contentions*

Defendants assert that Plaintiff's action to recover benefits must be dismissed based upon her failure to cooperate with Sun Life.  In particular, Defendants contend that Plaintiff has improperly refused to submit to an independent medical examination ("IME"), delayed providing Defendants with a signed, unaltered records release authorization, and has failed to provide other documentation requested by Sun Life (including her tax returns for the period between 2001 and 2007).  Defendants argue that Plaintiff's refusal to cooperate has prevented Defendants from completing a post-remand administrative review of her claim.  Therefore, according to Defendants, Plaintiff failed to exhaust her administrative remedies before commencing this action, and her Complaint should be dismissed.  (*See* Defs.' Mem. at 14-17.)

In opposition, Plaintiff contends that, on remand, Sun Life failed to render a decision on her claim for benefits within the timeframe set forth in 29 C.F.R. 2560.503-1(h), the applicable regulation accompanying ERISA.  Plaintiff asserts that, as a result, her claim is "deemed denied" as a matter of law and she was not required to take any further action to exhaust her administrative remedies before filing the Complaint.  (Pl.'s Opp'n at 4-5.)  Defendants contend that the regulation cited by Plaintiff does not apply to benefit reviews conducted following a "court-ordered remand[ ]."  (Reply Mem. at 10.)  According to Defendants, that regulation only "applies to an appeal from an initial benefit denial."  (*Id.*)

Plaintiff further asserts that because her claim is "deemed denied" as a matter of law, the appropriate standard of review for the Court to apply henceforth is *de novo*.  (Pl.'s Opp'n at 5 (quoting *Nicholas v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 106-07 (2d Cir. 2005)).  In addition, Plaintiff contends that she did cooperate with Defendants by submitting an altered, and

subsequently, an unaltered records release authorization form.  (*Id.*)  Moreover, Plaintiff asserts that Defendants never actually requested that she submit to an IME and even if they had, such an examination was not authorized by either the Remand Order or the Policy itself.  (*Id.* at 7-11.)

### III.  *Defendants' Motion for Summary Judgment is Denied*

#### A.  *The Regulatory Deadlines Set Forth in 29 C.F.R. § 2560.503-1 Apply Post-Remand*

As Defendants correctly point out, "there is a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Jones v. Unum Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993)).  In a decision rendered after *Jones* and *Kennedy*, however, the Second Circuit made clear that "[t]he question of whether [a plaintiff] exhausted administrative remedies is in turn dependant on whether [the defendant] complied with the regulatory deadlines of 29 C.F.R. § 2560.503-1(h)." *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 105 (2d Cir. 2005). This regulation requires a decision following a review of a denial of benefits to be made within 60 days of the request for review, or within 120 days if special circumstances exist.  *See id.* (citing 29 C.F.R. § 2560.503-1(h)(1)(i)).[12]  The regulation further provides that "[i]f such an extension of time for review is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension."  *See* 29 C.F.R. § 2560.503-1(h)(2).

---

[12]     This regulation was amended in 2000.  *See* Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70246-01 (Nov. 21, 2000). Although the parties have not addressed the issue, the Court finds that because Plaintiff's initial Notice of Claim for benefits was filed on February 15, 1999, the pre-2000 version of the regulations apply.  *See Nichols*, 406 F.3d at 101 n.1.  Accordingly, all references to 29 C.F.R. § 2560.503-1 shall be to the version current through July 1, 1999 unless otherwise noted.

Defendants argue – without citation to case law or other legal authority – that where, as here, a benefit review is conducted following a court-ordered remand, the regulatory deadlines set forth in 29 C.F.R. § 2560.503-1(h) do not apply. (Reply Mem. at 10.) However, at least one court within this Circuit has taken the opposite view. In *Rappa v. Connecticut General Life Insurance Co.*, 2007 WL 4373949, at *2 (E.D.N.Y. Dec. 11, 2007), the court considered the claim of a plaintiff in a strikingly similar procedural posture. The plaintiff had filed a complaint in an earlier, separate action challenging the defendant's termination of his long-term disability benefits, and the court remanded the case pursuant to 29 U.S.C. § 1133(2) to allow the plaintiff to submit additional evidence for the plan administrator's review. *Id.* The plaintiff sent medical records to the defendant, and ultimately commenced a second action when six months passed without any response from the defendant.[13] In analyzing whether the plan administrator made a timely decision on the plaintiff's post-remand claim, the court applied the timing requirements set forth in 29 C.F.R. § 2560.503-1(h). *Id.* at *7-8 (finding the plan administrator should have rendered a decision within 60 days from the date it received the plaintiff's additional medical records).[14]

The decision in *Rappa*, therefore, suggests that the time limitations set forth in 29 C.F.R. § 2560.503-1(h) would apply to Defendants' review of Plaintiff's claim post-remand. Courts in other circuits have also found that this regulation would apply to proceedings taking place

---

[13] After filing the second action on May 17, 2006, the plaintiff received a letter from the plan administrator dated May 15, 2006 informing him that his claim for benefits had been denied. *Rappa*, 2007 WL 4373949 at *2.

[14] The *Rappa* court also applied the pre-2002 version of the regulations because the plaintiff's claim was filed in 1999. *Id.* at *7 n.7 (noting that the "current version of the code gives insurers less, not more, time so the earlier version is advantageous to [the defendant]").

pursuant to court-ordered remands.  *Accord Grant v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 2010 WL 3749197, at *6 (N.D.Ga. Sept. 21, 2010) (citing 29 C.F.R. § 2560.503-1(h) to guide defendant in considering plaintiff's benefit claim on remand); *Stiers v. AK Steel Benefits Plans Admin. Comm.*, 2008 WL 1924252, at *6 (S.D.Ohio Apr. 29, 2008) (remanding to defendant plan administrator to provide "full and fair hearing" on appeal in accordance with 29 C.F.R. § 2560.503-1(h)(4)).  Defendants have not cited any legal authority to the contrary.

Moreover, Witek's July 27, 2007 letter to Plaintiff's counsel actually references the time periods for a benefit determination as they are set forth in the current version of 29 C.F.R. § 2560.503-1(f)(3).  (*See* AR 275 ("Under ERISA, a benefit determination must be made within 45 days after receipt of your claim.  However, ERISA[ ] does allow an extension of two separate period of 30 days each (for a total of 105 days) to make this claim determination.").)  Even though the current version of the regulations would not be applicable to Plaintiff's claim, which was filed in 1999, *see Nichols*, 406 F.3d at 101 n.1; *Rappa*, 2007 WL 4373949 at *7 n.7, this statement by Witek invoking the regulatory time frames for review tends to undercut Defendants' current assertion that the provisions of 29 C.F.R. § 2560.503-1 do not apply post-remand.

Given these facts, the Court finds that the regulatory deadlines set forth in the 1999 verison of 29 CFR § 2560.503-1(h) apply to Defendants' review of Plaintiff's claim for benefits post-remand.

**B.**    ***Defendants Did Not Technically Comply With The Regulations[15]***

As noted above, the applicable ERISA regulation requires that a decision on review must

---

[15]    As discussed in the text *infra*, Second Circuit law draws a distinction between a carrier's "technical" and "substantial" compliance with ERISA regulations.

be made "promptly," which means that the decision "shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review." 29 C.F.R. § 2560.503-1(h)(1)(i). In addition, the regulations provide that "if an extension of time for review is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension." 29 C.F.R. § 2560.503-1(h)(2).

The relevant question becomes, then, what date constitutes the "receipt of request for review" sufficient to trigger the 60-day time period. Neither party proffers any arguments in this regard, although Plaintiff suggests several possible trigger dates in her opposition papers. Plaintiff's 56.1 Statement states that "[t]he time for Sun Life to re-evaluate Solnin's claim began when the [Remand] Order, and Judgment [in the Prior Action], were entered on March 23, 2007." (Pl.'s 56.1 ¶ 46.) Defendants' response to this arguably legal conclusion is: "Admitted." (Defs.' Response to Pl.'s 56.1 ¶ 46.) If the 60-day clock began to run on March 23, 2007, Defendants undoubtedly failed to technically comply with the regulation. The record before the Court makes clear that after 60 days expired (on May 22, 2007) Defendants had not rendered any decision – and appear to have taken no action at all – with respect to Plaintiff's claim and further failed to give Plaintiff any written notice that an extension of time would be needed due to special circumstances.

Witek's July 27, 2007 letter to Plaintiff's counsel indicates that certain documentation was required from Plaintiff "to initiate [the] process" of "gathering additional medical evidence

and other pertinent information" from Plaintiff to "assist us in fully understanding how Ms. Solnin's claimed condition is affecting her from performing the material and substantial duties [of] any occupation." (AR 274.) Witek sets forth, without citation to the regulations or other legal authority, that a benefit determination must be made within 45 days after receiving Plaintiff's claim but that ERISA permits two separate 30-day extensions, for a total of 105 days. (AR 275.) Witek also informed Plaintiff's counsel as follows:

> Please note that the time from the date you have been advised of the information needed to proceed with the claim review to the time the information is received[ ] is considered "tolled" (not counted) in the total number of days allowed to make a determination.
>
> Therefore, our review of Ms. Solnin's claim is currently "tolled" pending receipt of all the information requested above . . . .

(AR 275.)[16] Defendants did not render a decision on Plaintiff's claim within 60 days of Witek's July 27, 2007 letter (September 25, 2007). Moreover, even if Witek's letter could be read to include a written notification to Plaintiff that "an extension of time for review is required because of special circumstances," *see* 29 C.F.R. § 2560.503-1(h)(2), Defendants did not issue a decision within 105 days (the deadline set forth in Witek's letter) or 120 days (the total length of time available pursuant to the 1999 version of 29 C.F.R. § 2560.503-1(h)(1)(i)).[17] Therefore, even if July 27, 2007 is the date that triggered the 60-day deadline, Defendants have not technically complied with the regulation.

---

[16] Although not specifically cited by Witek, this language tracks the language contained in the current version of 29 C.F.R. 2560.503-1(f)(3), which sets forth the deadlines for a plan administrator to notify a claimant for disability benefits of a plan's adverse benefit determination, and 2560.503-1(i)(4), which contains a tolling provision.

[17] A discussion of the applicability of any "tolling" doctrines is contained in Section D, *infra*.

Finally, even if the Court were to consider April 2, 2008 (the date on which Plaintiff submitted an unaltered records release authorization form to Defendants) as the date on which the 60-day deadline would begin to run, Defendants did not render a decision on Plaintiff's claim within 60 days (June 1, 2008), did not give Plaintiff written notice of the need for an extension, and did not render a decision within 120 days (July 31, 2008). Therefore, even using this date as the trigger for the regulation's deadline will not place Defendants in technical compliance with the regulation.

## C.    *Defendants Did Not Substantially Comply With The Regulations*

Although not raised by either party, the Second Circuit's decision in *Nichols v. Prudential Insurance Company of America*, 406 F.3d 98, 106 (2d Cir. 2005), requires the Court to examine not only whether Defendants technically complied with the regulatory deadlines, but also whether Defendants substantially complied with those deadlines. The Court must determine whether the Defendants' "failure to comply with the letter of the regulatory deadlines may be excused by [their] good faith efforts to resolve the appeal subsequent to the expiration of the deadline." *Id.*

The Second Circuit has observed that "the language of the regulation is not ambiguous." *Id.* In fact, 29 C.F.R. § 2560.503-1(h)(4) "states explicitly that failure to meet the 60-day deadline (or 120 days under 'special circumstances' and after notice of such extension) results in the claim being 'deemed denied.'" *Id.* (quoting 29 C.F.R. § 2560.503-1(h)(4) ("If the decision on review is not furnished within [the time periods described in paragraph (h)(1) of this section], the claim shall be deemed denied on review.")). Second Circuit jurisprudence "strongly suggest[s] that a plan administrator's failure to adhere literally to the regulatory deadlines renders the

claimant's administrative remedies exhausted by operation of law and consequently permits the claimant to seek review in the federal courts without further delay." *Id.* at 106.

The Second Circuit has, however, recognized the potential availability of the "substantial compliance" doctrine that would "forgive[ ] technical noncompliance for purposes of review of a plan administrator's discretionary decision." *Id.* at 107. The "parameters of the 'substantial compliance' doctrine" have not yet been "carve[d] out" by the Second Circuit. *See Tsagari v. Pitney Bowes, Inc. Long-Term Disability Plan*, 473 F. Supp. 2d 334, 337 (D.Conn. 2007). The Court finds it unnecessary to address that issue here, however, because the substantial compliance doctrine would not be available in this case for two reasons.

First, Defendants never rendered any post-remand decision on Plaintiff's claim, and the relevant case law suggests that a final decision – even if technically untimely – is a necessary prerequisite for the application of the substantial compliance doctrine. *See Nichols*, 406 F.3d at 109 (declining to apply substantial compliance doctrine when the defendant "failed to comply in any reasonable respect with the regulatory deadlines," "did not even acknowledge the request for an appeal until after the deadline had expired, and had not rendered any decision at the time of the suit"); *Tsagari*, 473 F. Supp. at 337 (noting that although the definite contours of the substantial compliance doctrine remained undefined, the Second Circuit had "suggested" that it may apply "if a final decision is ultimately made but falls outside the regulatory deadline"); *Pava v. Hartford Life & Accident Ins. Co.*, 2005 WL 2039192, at *9 (E.D.N.Y. Aug. 24, 2005) ("Thus, the case law in this Circuit indicates that where the administrator communicates with the claimant regarding the status of her appeal, acts in good faith, and does not delay its decision unreasonably, its failure to comply with the regulation deadlines may be excused.").

The substantial compliance doctrine has no applicability in this instance, however, for an additional, more fundamental reason. In *Nichols*, the Second Circuit expressly declined to apply the substantial compliance doctrine when doing so "can block or delay a plaintiff's access to the federal courts." *Nichols*, 406 F.3d at 107. *Nichols* has a similar fact pattern to that present here: The plaintiff, who had been receiving long-term disability benefits, was notified by the plan administrator that her benefits were being suspending because she was no longer considered totally disabled. The plaintiff was informed that she had a right to appeal and that, if she exercised that right she should forward "medical evidence of continued disability" and the plan administrator would "assess the need for an [IME] at that time." The plaintiff filed a written appeal, which was not acknowledged by the plan administrator until 67 days had passed. On day 81, the plan administrator requested that plaintiff appear for an IME. Plaintiff refused and, after not receiving any decision on her appeal, filed suit on day 197 for violations of ERISA. The plan administrator moved to dismiss the plaintiff's complaint based upon her failure to attend an IME or produce medical records, which it contended constituted a failure to exhaust administrative remedies. *Id.* at 101-02.

After determining that the plan administrator had failed to technically comply with the requirements and deadlines set forth in the 1999 version of 29 C.F.R. § 2560.503-1(h)(1), the Second Circuit considered the plan administrator's contention that it substantially complied with those regulations. The court found, however, that allowing the plan administrator to skirt the regulatory deadlines on the one hand, but argue for dismissal of the plaintiff's claim for failure to exhaust administrative remedies on the other hand would allow the "substantial compliance" doctrine to "block or delay a plaintiff's access to the federal courts." *Id.* at 107. The court

refused to apply the substantial compliance doctrine in such an instance, reasoning that:

> [A]dopting the proposition that substantial compliance can delay accrual of the right to sue would permit plan administrators to indefinitely tie up claimants, who are often in immediate need of benefits, with ongoing requests for information. Such a result would render the plain language of [29 C.F.R. §] 2560.503-1(h)(1) a nullity.

*Id.* at 107. For these reasons, the Court finds that the substantial compliance doctrine has no applicability here.

### D. *No Tolling Doctrine is Applicable Here*

Defendants strenuously argue that they were not able to render a decision on Plaintiff's post-remand claim because Plaintiff made clear her intention never to submit to an IME and unduly delayed in providing, *inter alia*, a valid records release authorization forms that would allow Defendants to access her medical and pharmacy records from third parties. (*See* Defs.' Mem. at 14-16.) The Court construes this argument as one of equitable tolling.[18] In essence, Defendants argue that because Plaintiff thwarted their efforts to gather relevant medical records and information, they could not make a post-remand decision regarding her claim for benefits. (*See* Reply Mem. at 11 ("Also, Sun Life could not make a final decision because plaintiff never agreed to appear for an independent medical examination that was repeatedly requested by defendant.").)

The current version of the relevant regulation contains the following tolling provision:

> For purposes of paragraph (i) of this section, the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable

---

[18]     In Witek's July 27, 2007 letter to Plaintiff's counsel, she stated: "Therefore, our review of Ms. Solnin's claim is currently 'tolled' pending receipt of all the information requested above . . . ." (AR 275.)

> procedures of the plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)2(iii)(B), or (i)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. § 2560.503-1(i)(4). The Court, however, has already determined that the 1999 version of the regulation apply here. *See* Section III.A, *supra*. The tolling provision cited above was inserted as part of amendments made in November 2000. *See* Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70246-01 (Nov. 21, 2000). In *Nichols,* the Second Circuit noted, that "[t]he amendment of the regulation may well indicate the Secretary of Labor's understanding that the earlier version of the regulation applicable here did not incorporate such tolling." *See Nichols*, 406 F.3d at 108 (expressly declining to "decide this issue").

Because the parties have not addressed several key points in their written submissions, the Court cannot hold that any tolling provision is applicable at this time. In particular, as noted above, the parties have not briefed the legal issue of what date started the running of the 60-day regulatory clock. In their Local Civil Rule 56.1 Statement, Defendants "[a]dmitted" Plaintiff's statement that "[t]he time for Sun Life to re-evaluate Solnin's claim began when the Order, and Judgment, were entered on March 23, 2007." (Defs.' Response to Pl.'s 56.1 ¶ 46.) This statement, however, is more in the nature of a legal conclusion rather than a statement of "material facts" as contemplated by Local Civil Rule 56.1. Moreover, given that an appeal of the March 23, 2007 Order was filed on April 23, 2007 and was subsequently withdrawn on June 21,

2007, the Court is hesitant to conclude, without the benefit of briefing by the parties, that March 23, 2007 is the appropriate trigger date.[19] In addition, the parties have not presented the Court with legal arguments regarding: (1) whether the tolling provision present in the current version of the regulations would apply to Plaintiff's claim, which was initiated in 1999; (2) whether there has been technical compliance with the requirements set forth in that tolling provision; (3) whether there has been substantial compliance with those requirements, and whether a substantial compliance analysis would be appropriate in this instance given the law set forth in *Nichols*, 406 F.3d at 107.

Accordingly, the Court finds that Defendants are not entitled to the benefit of any tolling of the applicable regulatory deadlines based upon Plaintiff's alleged refusal to submit to an IME or produce arguably relevant medical records or other information. The finding is made without prejudice and with the right to renew upon submission of appropriate briefing containing citation to applicable case law and other legal authority.

### E.   *Standard of Review*

Plaintiff argues in her opposition papers that because Defendants failed to comply with the deadlines set forth in the regulations, her claim is "deemed denied" as a matter of law and so that Court should review her claim under the *de novo* standard. The Second Circuit has clearly held that a claim that is "deemed denied" based upon a plan administrator's failure to comply

---

[19]     If that date did, in fact, start the running of the regulatory clock, the 60-day deadline expired on May 22, 2007 – approximately 65 days before Witek's July 27, 2007 letter requesting information necessary to "initiate this process" and which attempted to "'toll[ ]'" Defendants' review of Plaintiff's claim. (AR 274-275.) Under such a scenario, even if the tolling provision present in the current version of the regulation was available to Defendants, they could not avail themselves of its protections. *See Nichols*, 406 F.3d at 108 ("A tolling period cannot delay the expiration of a deadline when that deadline has already expired.").

with regulatory deadlines is "not denied by an exercise of discretion, but by operation of law." *Nichols*, 406 F.3d at 109.  Therefore, "a 'deemed denied' claim is entitled to de novo review." *Id.*; *see also Tsagari*, 473 F. Supp. 2d at 337.

As set forth above, Defendants have not technically complied with the applicable regulatory deadlines governing their post-remand review of Plaintiff's claim, and Defendants are not entitled to the application of the substantial compliance doctrine.  While the Court has determined that no tolling provision is applicable in this instance, however, such finding is made without prejudice and with the right to renew.  Accordingly, the Court finds it premature to determine whether the Plaintiff's post-remand claim is entitled to *de novo* review.

### *CONCLUSION*

For the reasons set forth above, Defendants' motion for summary judgment is DENIED. To the extent that Defendants wish to submit supplemental briefing on the tolling issue, they are directed to submit a pre-motion conference letter, in conformance with Rule 3(F) of the Court's Individual Practice Rules on or before February 21, 2011.[20]  Plaintiff's response, if any, is to be filed within ten days thereafter.

**SO ORDERED.**

Dated: Central Islip, New York
      January 31, 2011

                                       _____/s/_____
                                       Denis R. Hurley
                                       Unites States District Judge

---

[20]    If Defendants do not wish to submit supplemental briefing on the tolling issue, they are directed to notify the Court in writing on or before February 21, 2011.