UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JANET SOLNIN,

                            Plaintiff,                    **MEMORANDUM & ORDER**

   -against-                                        08 CV 2759  (DRH) (GRB)

SUN LIFE AND HEALTH INSURANCE
COMPANY, GENWORTH LIFE AND
HEALTH INSURANCE COMPANY, GE
GROUP LIFE ASSURANCE COMPANY,
and PHOENIX LIFE INSURANCE
COMPANY,

                            Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**RIEMER & ASSOCIATES LLC**
Attorney for Plaintiff
60 East 42nd Street
Suite 1750
New York, New York 10165
By:    Scott M. Riemer, Esq.

**TURLEY, REDMOND, ROSASCO & ROSASCO LLP**
Attorney for Plaintiff
3075 Veterans Memorial Highway
Suite 200
Ronkonkoma, New York 11779
By:    Scott R. Tirrell, Esq.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
Attorney for Defendants
601 Walnut Street
Suite 130 East
Philadelphia, Pennsylvania 19106
By:    Joshua Bachrach, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Janet Solnin commenced the present action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et. seq.* ("ERISA") to recover benefits allegedly due under an employee benefit plan. Previously, defendants Sun Life and Health Insurance Company ("Sun Life"), Genworth Life and Health Insurance Company ("Genworth"), GE Group Life Assurance Company ("GE Group Life"), and Phoenix Life Insurance Company ("Phoenix Life") moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. By Memorandum & Order dated January 31, 2011 (the "Order"), defendants' motion was denied. However, as further explained below, the Court gave defendants the opportunity to provide supplemental briefing on one limited issue. Having reviewed the parties' supplemental briefs, and for the reasons set forth below, the Court concludes that the tolling provision contained in the current version of the applicable ERISA regulations does not apply to plaintiff's claim. The Court further finds that a *de novo* standard of review applies.

## BACKGROUND

The material facts are set forth at length in the Order and are repeated herein only to the extent they are relevant to the issues in the parties' supplemental briefs.

### *Plaintiff's Injury and Approval for Long Term Disability Benefits*

Plaintiff was employed as an Assistant Manager by non-party Reliance Federal Savings Bank ("Reliance"). On November 18, 1998, Plaintiff suffered a back injury at work. On February 13, 1999, plaintiff filed a Notice of Claim for disability benefits under the disability

insurance policy provided by Reliance (the "Policy").[1] Plaintiff's claim for long term disability benefits was approved, and she began receiving such benefits as of August 4, 1999.

*The Policy*

The Policy is an employee welfare benefit plan governed by ERISA. By letter dated March 28, 2002, GE Group Life advised plaintiff that the definition of "Total Disability" applicable to her claim had changed. Plaintiff was further notified that additional medical information was required from her and that additional benefits could not be considered until the requested information was received and reviewed. Plaintiff submitted additional medical information to GE Group Life, which included reports prepared by her treating physician and physical therapist.

*Dr. Hicks' Reports*

GE Group Life then referred plaintiff's claim to one of its outside medical doctor-consultants, Thomas Hicks, M.D., for a determination regarding plaintiff's restrictions and limitations. On April 5, 2002, Dr. Hicks issued a report finding that plaintiff was capable of performing sedentary work with certain restrictions and limitations.

On May 9, 2002, GE Group Life asked Dr. Hicks to review new information obtained since his prior review, which essentially consisted of recent video surveillance footage of plaintiff. On May 9, 2002, Dr. Hicks issued a report opining that plaintiff was capable of performing "sedentary-light work." (Order at 7.)

---

[1] As set forth in the Order, for purposes of this motion the Court presumes that Phoenix Life, GE Group Life, Genworth, and Sun Life all, at some point or another, administered the Policy governing plaintiff's claim for benefits. (Order at 3 & n.2.)

*GE Group Life's Denial of Long-Term Benefits*

By letter dated May 10, 2002, GE Group Life advised plaintiff that it had determined that she was able to perform "sedentary to light work" and was therefore not eligible for long-term disability benefits beyond August 4, 2001. Plaintiff formally appealed the denial of continued long-term disability benefits, but her appeal was denied.

*The Prior Action*

On September 24, 2002, plaintiff initiated a separate action before this Court, docket number 03 CV 4857 (the "Prior Action"). Her Complaint asserted a breach of contract and an ERISA claim, and sought a declaratory judgment that plaintiff was totally disabled within the meaning of the Policy. With respect to plaintiff's ERISA claim, the Court found that "GE Group Life's denial of long-term benefits was arbitrary and capricious" because the evidence on which it relied – the video surveillance and Dr. Hicks' reports – did not "constitute substantial evidence to support the conclusion that Plaintiff can perform sedentary work." (Order at 8.) Additionally, the Court found that "the record here shows a complete absence of consideration of Plaintiff's vocational circumstances," a review of which is required by the Second Circuit. (*Id.* at 10 (citing *Demirovic v. Building Service 32 B-J Pension Fund*, 467 F.3d 208, 213-15 (2d Cir. 2006).)

Accordingly, the Court denied the defendants' motion with respect to plaintiff's ERISA claims and remanded the matter to GE Group Life for further proceedings consistent with its opinion and with the following directive:

> Under *Demirovic*, GE Group Life must consider both whether Plaintiff is physically capable of obtaining employment from which she may earn a reasonably substantial income and whether she is vocationally qualified to obtain such employment. *See Demirovic*, 467 F.3d at 215. While GE Group Life need not employ a particular

> method to make this determination, its conclusion must satisfy a reviewing court that consideration of the claimant's circumstances was not arbitrary and capricious. *Id.* In addition, although the Court's review was confined to the administrative record, upon remand, GE Group Life should look at any additional materials submitted by Plaintiff in support of her application.

(*Id.* at 11 (citation omitted).)

*The Parties' Post-Remand Correspondence*

The first post-remand correspondence between the parties appears to have been by letter dated July 5, 2007, in which plaintiff's counsel requested a copy of the administrative record and proposed a schedule by which the review would proceed. Specifically, plaintiff proposed that she "be afforded 60 days" from receipt of the administrative record to submit additional medical and vocational evidence, and defendants would then have 60 days to review "all existing and new evidence, including any Independent Medical Examinations you wish to obtain." (AR 280.)[2] Plaintiff's counsel stated: "Given the nature of Ms. Solnin's disability and the credentials of her treating physician[s], we believe a full and fair review would require an IME by a Board Certified Orthopedic Surgeon." (*Id.*) In response, Mary Witek ("Witek"), a Long Term Disability Consultant for Genworth, sent plaintiff a July 27, 2007 letter stating that "we are in the process of gathering additional medical evidence and other pertinent information" regarding plaintiff. (AR 274.) "To initiate this process," Witek enclosed a records release authorization form for plaintiff to sign so that Genworth could "request and obtain all medical evidence in

---

[2] "AR" refers to the documents submitted by plaintiff with her original summary judgment opposition papers, which purported to be "portions of the claim file produced by Sun Life in this action between the date that the Court issued its remand order in the prior action (March 23, 2007) and the date that this action was commenced (July 10, 2008)." (Aff. of Scott M. Riemer, dated February 12, 2010, ¶ 2 & Ex. A.)

5

association to her claimed disability." (*Id.*) Witek also requested that plaintiff produce several other documents, including copies of her tax returns for the years between 2001 and 2007. (*Id.*) At the conclusion of the letter, Witek made the following statement:

> Under ERISA, a benefit determination must be made within 45 days after receipt of your claim. However, ERISA[ ] does allow an extension of two separate periods of 30 days each (for a total of 105 days) to make this claim determination. Please note that the time from the date you have been advised of the information needed to proceed with the claim review to the time the information is received[ ] is considered "tolled" (not counted) in the total number of days allowed to make a determination.
>
> Therefore, our review of Ms. Solnin's claim is currently "tolled" pending receipt of all the information requested above and [we] would appreciate having this information forwarded to my attention within 30 days of this letter. If this requested information is not received Ms. Solnin's claim may be denied for failure to provided sufficient "Proof of Loss" as contractually required.

(AR 275.)

Plaintiff's claim remained "under active review" by Genworth, and the parties continued corresponding in July, August, and September 2007. (*See* Order at 12-13.) Plaintiff subsequently submitted additional medical evidence in support of her claims. Genworth acknowledged receipt of these materials and reminded plaintiff that failure to produce certain outstanding documents (including a signed records release authorization form) "could result in a denial of her claim." (AR 186.) Plaintiff was informed by Genworth that "[o]nce we are in receipt of the requested claim forms, we can start our re-evaluation. As part of this re-evaluation we may exercise our right to request Ms. Solnin attend an Independent Medical Examination (IME)." (*Id.*)

On January 8, 2008, counsel for plaintiff submitted supplemental materials to Genworth

including a signed authorization for the release of her medical records. Plaintiff had, however, made significant alterations to the authorization form. (AR 153.) In particular, plaintiff crossed out the language on the authorization form that would allow defendants to obtain information from any business associate, financial institution, or governmental agency, including the Social Security Administration, State Workers' Compensation, or State Unemployment Compensation. (Defs.' 56.1 ¶ 33.) Separately, plaintiff stated that "it is our legal position that you have no right to an IME at this time," and that she did not have any additional evidence to submit. (AR 140.) Accordingly, plaintiff requested that defendants "begin the re-evaluation ordered by Judge Hurley immediately pursuant to the decision making deadlines found in the ERISA regulations." (*Id.*)

On February 29, 2008, in response to plaintiff's request for a status update, Witek sent plaintiff's counsel a letter advising him that "your client is improperly refusing to cooperate in our review of her LTD claim for benefits." (AR 134.) In particular, Witek noted that plaintiff had yet to produce "an unredacted Authorization to Obtain and Redisclose Information" or the requested tax documents. (AR 135.) Witek stated that the altered records release authorization form provided by plaintiff was unacceptable. Finally, Witek stated that defendants' "right to request an IME is present in the Plan language, the right to request an IME is not in any way restricted and [ ] a claimant's refusal to have an IME will terminate all otherwise eligible benefit payments." (AR 137.) Witek enclosed another records release authorization form and instructed plaintiff to sign it but not to redact or alter it in any way.

On April 2, 2008, plaintiff's counsel sent a letter to Witek enclosing an executed and unaltered records release authorization form. (AR 117, 119.) Plaintiff's counsel also informed

7

Witek that the tax returns requested by defendants did not "exist" because plaintiff was not "required to file tax returns during those years." (AR 117.) Plaintiff's counsel urged Witek to attend to plaintiff's claim as "there are no additional outstanding requests, and [ ] nearly three months have passed since our submission on January 8, 2008." (AR 118.)

In response, Witek sent an April 4, 2008 letter to plaintiff's counsel informing him that "we are in the process of attempting to independently[ ] obtain medical records from Dr. Thomas Mauri," at which point defendants' medical consultant would review the file. (AR 26.) Witek stated further that she was attempting "to secure any and all pharmacy records" regarding plaintiff and, to that end, plaintiff would be required to complete enclosed pharmacy authorization forms. (*Id.*) Witek also noted that "once the file has been reviewed by our medical consultant, we will be requesting Ms. Solnin [ ] attend an Independent Medical Examination." (*Id.*)

Plaintiff's counsel sent a letter to Witek, dated April 23, 2008, which, *inter alia*, made the following statement:

> Evidently, Sun Life intends to request [an Independent Medical] [E]xamination regardless of what the "medical consultant" opines, or perhaps, you already know what your medical consultant will opine. In any event, if Sun Life pays Ms. Solnin the benefits due and owing to her under the policy to date, and puts Ms. Solnin "on claim" going forward, then an Independent Medical Examination would appear to be entirely "reasonable" under the policy provision that you have repeatedly cited, to determine her ongoing entitlement to future benefits. At this juncture, however, this claim is on remand . . . As a result, Sun Life's role is to reevaluate the medical documentation of many years of disability . . . Sun Life's present evaluation is accordingly limited to this context.

(AR 21.) No further correspondence was exchanged between the parties and on July 10, 2008,

8

plaintiff filed the Complaint in the instant action.

## DISCUSSION

### I. Defendants' Prior Motion for Summary Judgment

#### A. The Parties' Contentions

In their motion for summary judgment, defendants asserted that plaintiff's action to recover benefits should be dismissed due to her failure to exhaust her administrative remedies before commencing the action. In particular, defendants contended that plaintiff improperly refused to submit to an independent medical examination ("IME"), delayed providing defendants with a signed, unaltered records release authorization, and failed to provide other documentation requested by Sun Life (including her tax returns for the period between 2001 and 2007). Defendants argued that plaintiff's refusal to cooperate prevented defendants from completing a post-remand administrative review of her claim.

In opposition, plaintiff contended that, on remand, Sun Life failed to render a decision on her claim for benefits within the timeframe set forth in 29 C.F.R. 2560.503-1(h), the applicable ERISA regulation. Plaintiff asserted that, as a result, her claim was "deemed denied" as a matter of law and she was not required to take any further action to exhaust her administrative remedies before filing the Complaint. In response, defendants argued that the regulation cited by plaintiff did not apply to benefit reviews conducted following a court-ordered remand.

#### B. The Court's Rulings

The Court began by noting that "the Second Circuit [has] made clear that '[t]he question of whether [a plaintiff] exhausted administrative remedies is in turn dependant on whether [the defendant] complied with the regulatory deadlines of 29 C.F.R. § 2560.503-1(h).'" (Order at 22

(quoting *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 105 (2d Cir. 2005)) (first alteration added).) This regulation requires a decision following a review of a denial of benefits to be made within 60 days of the request for review, or within 120 days if special circumstances exist. *See* 29 C.F.R. § 2560.503-1(h)(1)(i). The regulation further provides that if "an extension of time for review is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension." *See* 29 C.F.R. § 2560.503-1(h)(2).

Defendants argued – without citation to legal authority – that the regulatory deadlines set forth in 29 C.F.R. § 2560.503-1(h) did not apply to a benefit review conducted following a court-ordered remand. The Court, relying on case law from within and outside the Second Circuit, disagreed. (Order at 23-24 (citing *Rappa v. Conn. Gen. Life Ins. Co.*, 2007 WL 4373949, at *2 (E.D.N.Y. Dec. 11, 2007), and collecting cases from other jurisdictions).) Further, the Court noted that this regulation had been amended in 2000 and found that because plaintiff's initial Notice of Claim for benefits was filed in February 1999, "the pre-2000 version of the regulations apply." (Order at 22 n.12 (citing *Nichols*, 406 F.3d at 101 n.1).)

Next, the Court concluded that defendants failed to technically comply[3] with the applicable regulatory requirement that a decision on review "shall not ordinarily be made later than 60 days after the plan's receipt of a request for review,[4] unless special circumstances (such

---

[3] As discussed in the Order, the Second Circuit draws a distinction between "technical" and "substantial" compliance with ERISA regulations. (*See* Order at 24 n.13.)

[4] The Court noted that the parties had failed to present any briefing on the question of "what date constitutes the 'receipt of request for review' sufficient to trigger the 60-day time period." (*Id.*) The Court ultimately did not decide the issue, because it concluded that under any possible "trigger date," defendants did not render a decision on plaintiff's claim within 60 days,

as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review." (Order at 24-26 (quoting 29 C.F.R. § 2560.503-1(h)(1)(i)).) Nor did defendants furnish "written notice" to plaintiff that "an extension of time for review [was] required because of special circumstances." (*Id.* at 25 (quoting 29 C.F.R. § 2560.503-1(h)(2)).)

The Court then turned to the question of whether the "substantial compliance" doctrine would apply, such that defendants' "failure to comply with the letter of the regulatory deadlines may be excused by [their] good faith efforts to resolve the appeal subsequent to the expiration of the deadline." (Order at 27-28 (citing *Nichols*, 406 F.3d at 106-07 (recognizing the potential availability of a "substantial compliance" doctrine that would "forgive[ ] technical noncompliance for purposes of review of a plan administrator's discretionary decision") and *Tsagari v. Pitney Bowes, Inc. Long-Term Disability Plan*, 473 F. Supp. 2d 334, 337 (D.Conn. 2007) (noting that the "parameters of the 'substantial compliance' doctrine" have not yet been "carve[d] out" by the Second Circuit).)

The Court concluded that "the substantial compliance doctrine would not be available in this case for two reasons." (Order at 28.) First, "Defendants never rendered any post-remand decision on Plaintiff's claim, and the relevant case law suggests that a final decision – even if technically untimely – is a necessary prerequisite for the application of the substantial compliance doctrine." (*Id.*) Second, the Court concluded that in the Second Circuit, the

---

did not give plaintiff written notice of the need for an extension, and did not render a decision within 120 days. (Order at 25-27.)

11

substantial compliance doctrine cannot be applied when its effect would be to "block or delay a plaintiff's access to the federal courts." (*Id.* at 29 (quoting *Nichols*, 406 F.3d at 107).)

### C. *The Issue for Supplemental Briefing*

In their original motion papers, defendants strenuously argued that they were not able to render a decision on plaintiff's claim post-remand because plaintiff made clear her intention never to submit to an IME and unduly delayed in providing, *inter alia*, a valid records release authorization form that would allow defendants to access her medical and pharmacy records from third parties. The Court construed this argument to be one of equitable tolling. (*See* Order at 30.)

The current version of the relevant ERISA regulation contains the following tolling provision:

> For purposes of paragraph (i) of this section, the period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the reasonable procedures of the plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing. In the event that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)2(iii)(B), or (i)(3) of this section due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. § 2560.503-1(i)(4) (post-2000 amendments version). This tolling provision was inserted as part of amendments made to the regulations in November 2000. *See* Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70246-01 (Nov. 21, 2000). The Court, however, had already determined that the 1999 version of the

regulation, which did not contain any such tolling provision, applied to defendants' post-remand review of plaintiff's claim. (*See* Order at 22 n.12.) Therefore, at the conclusion of the Order, the Court identified the following issues, which the parties had not addressed in their written submissions: (1) whether the tolling provision present in the current version of the regulations applied to plaintiff's claim, which was initiated in 1999; and, if that tolling provision did apply, (2) what date started the running of the 60-day regulatory clock[5]; (3) whether defendants technically complied with the requirements set forth in that tolling provision; and (4) whether defendants substantially complied with those requirements, if, in fact, a substantial compliance analysis would be appropriate in such a scenario. (Order at 31-32.) The Court provided defendants with an opportunity to brief these limited issues.

## II.     *The Present Application*

Unfortunately, defendants' supplemental brief does not address the threshold question posed by the Court in the Order, to wit: Given that the Court has already determined that the regulatory deadlines set forth in the pre-2000 version of 29 C.F.R. § 2560.503-1(h) applied to defendants' post-remand review of plaintiff's claim for disability benefits, (*see* Order at 22 n.12 & 24), and given that the pre-2000 version of the regulations does not contain any tolling provision, is the tolling provision contained in the current verison of the regulations (i.e., 29

---

[5]  As the Court noted in the Order, if the appropriate "trigger date" was March 23, 2007 – the date on which it remanded plaintiff's claim for review by defendants – the 60-day deadline expired on May 22, 2007. That was approximately 65 days before Witek's July 27, 2007 letter requesting information necessary to "initiate this process" and which attempted to "'toll[ ]'" defendants' review of plaintiff's claim. (AR 274-275.) The Court found that under such a scenario, even if the tolling provision present in the current version of the regulation was available to defendants, they could not avail themselves of its protections. (Order at 32 n.19 (citing *Nichols*, 406 F.3d at 108 ("A tolling period cannot delay the expiration of a deadline when that deadline has already expired.")).)

C.F.R. § 2560.503-1(i)(4)) applicable in this case?

Rather than provide any analysis with respect to this question, defendants attempt to re-argue issues already determined by the Court, and assert that "neither [the pre-2000 or the current] version of the ERISA regulations applies to a [claim review following a] remand, [and so] none of [the regulatory] deadlines automatically applied to the [post-]remand [claims review] in this case." (Defs.' Mem. at 4) According to defendants, "since neither version of the regulations directly applies to the situation in this case, there is no reason why the Court cannot apply the latter version of the regulations which clearly permits tolling." (Reply Mem. at 3.) This argument, of course, ignores the fact that the Court has already explicitly ruled that the pre-2000 version of the regulations applies here.

By its terms, the current version of the regulations applies only "to claims filed under a plan on or after January 1, 2002." 29 C.F.R. § 2560.503-1(o)(1) (post-2000 version). And, although the Second Circuit did not decide the issue, it noted in *Nichols* that the fact that the regulations were amended in 2000 "to include just such a tolling provision . . . may well indicate the Secretary of Labor's understanding that the earlier version of the regulation applicable here did not incorporate such tolling." *Nichols*, 406 F.3d at 108 (citing Claims Procedure, 65 Fed.Reg. 70, 246, 70, 270 (Nov. 21, 2000)). Defendants have not cited to any case law or other legal authority that would indicate to the contrary.[6] Therefore, the Court concludes that because

---

[6] Defendants' citation to *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) (holding that a pension fund's "failure to comply with the regulatory obligation to disclose the existence of a cause of action to the plan participant whose benefits have been denied is the type of concealment that entitles plaintiff to equitable tolling of the statute of limitations") is inapposite. The Court is similarly unpersuaded by defendants' argument that April 2, 2008 (the date on which plaintiff returned an unaltered, signed records release authorization) was the appropriate trigger date and that, accordingly, because plaintiff

14

(1) the pre-2000 version of the regulations did not contain any tolling provision, (2) a tolling provision was added to the regulations by virtue of the 2000 amendments, and (3) the current version of the regulations specifically applies only to claims filed on or after January 1, 2002, the tolling provision set forth in the current version of the regulations does not apply to plaintiff's claim.[7]

## III. Standard of Review

The pre-2000 version of the regulations, applicable here, provides that if a decision on a review of a disability claim is not furnished to a claimant within the time period specified in 29 C.F.R. § 2560.503-1(h)(1), i.e., 60 days (or 120 days, if special circumstances exist) after receipt of a request for review, "the claim should be deemed denied on review." 29 C.F.R. § 2560.503-1(h)(4). Pursuant to this regulation, defendants' failure to comply with the deadlines set forth in the regulations renders plaintiff's claim "deemed denied" as a matter of law.

Plaintiff asserts that because her claim has been "deemed denied," it should be reviewed under a *de novo* standard. The Second Circuit has held that a claim that is "deemed denied" based upon a plan administrator's failure to comply with regulatory deadlines is "not denied by

---

filed her lawsuit before 120 days had elapsed, her lawsuit was "premature." (Reply Mem. at 9.) This argument assumes not only that April 2, 2008 was the appropriate trigger date, but also that "special circumstances" existed that would warrant defendants availing themselves of the 120-day period. The Court declines to make such assumptions, especially since this argument is raised for the first time in defendants' supplemental reply brief. Further, the Court has already concluded that defendants failed to furnish plaintiff with the written notice required by 29 C.F.R. § 2560.503-1(h)(2) if an extension was, in fact, required due to special circumstances. (*See* Order at 25.)

[7] Given the Court's conclusion that the tolling provision set forth in the current version of the regulations does not apply to plaintiff's claim, it need not decide the other issues identified in the Order as requiring supplemental briefing (i.e., the appropriate trigger date, and whether the tolling provision was technically and/or substantially complied with).

15

an exercise of discretion, but by operation of law." *Nichols*, 406 F.3d at 109. Therefore, "a 'deemed denied' claim is entitled to de novo review." *Id.*; *see also Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 243-44 (2d Cir. 2007) (finding *de novo* review appropriate when "the Plan administrators explicitly refused to decide Strom's claim, and such a non-decision cannot be deemed an 'exercise of discretion' to which the district court might have deferred").[8] Accordingly, the Court concludes that plaintiff's "deemed denied" claim for disability benefits will be subject to *de novo* review. *See Strom*, 497 F.3d at 244; *Nichols*, 406 F.3d at 109.

---

[8] In *Strom*, the Circuit noted that the defendant's argument that a final decision was not issued because the plaintiff "failed to comply with requests for certain documents does not change the fact that the Plan administrators never issued a final decision on Strom's claims, explaining why, under the terms of the Plan, she was ineligible for the benefits she claimed." *Strom*, 497 F.3d at 244 n.5.

## *CONCLUSION*

For the reasons set forth above, the Court concludes that the tolling provision contained in the current version of the regulations does not apply to plaintiff's claim. Thus, because defendants have failed to technically comply with the applicable regulations, and because neither the substantial compliance doctrine nor any tolling provision apply, plaintiff's claim for disability benefits is "deemed denied." The Court further finds that a *de novo* standard of review applies.

Discovery has been stayed pending the outcome of defendants' motion for summary judgment. (*See* Docket No. 20.) Therefore, the parties are directed to contact Magistrate Judge Gary R. Brown within thirty days of the date of this Order to schedule a status conference.

**SO ORDERED.**

Dated: Central Islip, New York
      May 23, 2012                      /s/
                                          Denis R. Hurley
                                          Unites States District Judge